23-13-19 Consensual Insurance v. Republic of Sudan Thank you, Your Honor. May it please the Court, Sean Carter of Cosin O'Connor arguing on behalf of the appellees who are the move-ins with respect to the matter before the Court this morning. The motion seeks dismissal of the Republic of Sudan's proposed appeal under the Collateral Order Doctrine of a District Court ruling denying its motion to dismiss on sovereign immunity grounds based on a straightforward application of the text of 28 U.S.C. 1605 A.F., which eliminates the right of state sponsors of terrorism to pursue collateral order doctrine appeals in terrorism cases. Briefly, by way of background, appellees are family members who lost loved ones in the September 11th attacks, survivors of those attacks, and commercial parties that incurred losses as a result of the attacks. They brought suit against the Republic of Sudan. I want to know the background. I'm curious about the text, right? So they make the argument that 1605 A, the earlier section, distinguishes between cases brought or maintained, and 1605 A.F. only says brought under. Was your action brought under or maintained? It was brought under, Your Honor. Your Honor, it was brought under 1605 A, and that's what the District Court found. The District Court, in fact, found that it was inappropriate for plaintiffs to simply maintain their action under 1605 A based on the prior file. So you brought a related action. We brought a related action pursuant to 1605 A, and that's the new action, and the NDAA, which allows you to bring a related action, says it's brought under 1605 A. That's correct, Your Honor. Now, do bar and interlocutory appeals under 1605 A reach the claims under JASTA and other provisions? Your Honor, it does in three respects. First, 1605 A.F. itself, by its plain language, indicates that it bars collateral appeals in any action brought under 1605 A with respect to orders that do not conclusively end the litigation. The District Court found that plaintiffs had brought claims under 1605 A, and that is readily confirmed by the complaints. And it's the litigation itself. It's not the claim. It has to be conclusively determined. In other words, in other words, right? Your Honor, the action has to be brought pursuant to 1605 A, and the statute is intended to be read in expansive terms to preserve the rights and remedies of terrorism victims. The overarching purpose of the statute is to strip state sponsors of terrorism of certain jurisdictional, substantive, and procedural advantages that foreign sovereigns normally The 1605 A.F. says that an action brought under this section, appeals from orders not conclusively ending litigation, may only be taken pursuant to 1292 B. When we say an action brought under this section, is the 1605 A claim a separate action from the other claims you have? Your Honor, it's embodied in the same complaint as the other claims, but that complaint is the action which is brought pursuant. So that's an action brought under all the provisions under which you sue. So it reaches the entire, that was my point, it reaches the entire action. That's correct, Your Honor. And again, the claim... Is that because state sponsors of terrorism, once they're picked as state sponsors of terrorism, don't enjoy the same comedy as others would in terms of community, sovereign community generally, once they are state sponsors? That is correct, Your Honor. The entire design of 1605 A is to strip away certain of the protections and procedural advantages that foreign sovereigns normally enjoy in U.S. courts. 1605 A.F. is a critical component of that design and was specifically geared to addressing the problem of state sponsors coming to court and delaying litigation of terrorism victims through interlocutory appeals and other means. How long has this case been going? The case against Sudan in particular has been ongoing, at least for certain of the appellees, since 2002 or 2003. Sudan ignored the litigation for many years until 2020 when it belatedly appealed, which underscores the importance of adherence to 1605 A.F.'s prohibition on interlocutory appeals. Congress, through the Sudan Claims Resolution Act, made very clear that it intended the protections of 1605 A to apply to the appellees in this action. It specifically said that with respect to this MDL, the proceedings shall be governed by applicable law in effect before the date of the enactment of this act, the Sudan Claims Resolution Act, including 28 U.S.C. 1605 A. So were there any doubt about this? Congress eliminated it through the Sudan Claims Resolution Act when it indicated that it intended the 9-11 community to have the benefit of the protections of 1605 A. Beyond the plain text, there's... But there are other claims. If you didn't have a claim under 1605 A, we normally would say that a denial of sovereign immunity is subject to the collateral order doctrine, right? Correct, Your Honor. So is it anomalous that if you bring one claim, it suddenly transforms the way we would treat all the other claims in the complaint? Your Honor, I don't think it's anomalous. I think it's part of the interplay between the immunity provisions at issue here. Congress understood quite clearly that in any case involving a claim against a state sponsor of terrorism arising from a terrorist attack on U.S. soil, the victims in that case would bring claims both pursuant to 1605 A and pursuant to 1605 B. And as a result of that, Congress knew and understood that the protections afforded by 1605 A, and in particular, 1605 A.F., would be present in and adhere in that action. Sudan's basic argument here that the existence of an additional basis of jurisdiction under JASTA eliminates the protections afforded to terrorism victims and actually operates to provide Sudan a procedural advantage simply makes no sense under the purpose and operation of the statutes. It would result in a world in which state sponsors of terrorism enjoy greater rights and protections where their terrorist activities give rise to an attack on U.S. soil than when their terrorist activities give rise to an attack solely outside of the United States. Suppose a plaintiff wants to bring a case under JASTA, and it's not a state-sponsored terrorism case. It's a terrorism case, but it's domestic. But then they decide that they've got a theory of some sort, one sort or another, in which they're going to try and claim that this was a state-sponsored terrorism and that the person was, you know, was covered under 1605 A, and they throw in a 650 A count just to avoid the appeal early on. And is there a danger of that, that there could be, that plaintiffs would reach out and try and stretch their case to cover 1605 A just to avoid the appeals? Your Honor, the universe of state sponsors of terrorism is very small. And as a consequence, it's not something that someone could do in a suit against... Well, they might do it, but then there would be an appeal. It might even be a frivolous appeal. But that would have to be determined. You know, I'm talking about somebody who isn't really playing by the rules or has come up with a theory that maybe because of an affiliation or a set of alliances or something of that sort, that this is a state-sponsored terrorism. Your Honor, the requirements are very clear that the entity in question has to be formally designated by the State Department. So any effort to sort of expand that and just simply allege that another state is... Well, there would be a threshold. In other words, there could be a threshold determination that the count doesn't apply. At least that much could be a... I think that much could be determined by the district court. And under the circumstances Your Honor described, I think the litigant would be at risk of sanctions for bringing a claim. And if permitted, I'd like to reserve a little bit of time in rebuttal unless Your Honor has some additional questions. Okay, why don't we reserve the last minute? Thank you. Okay, thank you. We'll hear from the appellant, Mr. Curran. May it please the Court. Christopher Curran of Whiten Case on behalf of the Republic of the Sudan. I'm joined today not only by my law firm colleagues but by the Sudanese ambassador to the United States, His Excellency Mohamed Idris. One element of the statutory language that hasn't been touched upon at all so far is at the very start of 1605 capital A. And in particular, 1605 capital A A1 where there's a threshold statutory provision that says that that entire section doesn't apply where cases are otherwise covered by Chapter 97 of Title 28. That provision renders 1605 capital A wholly inapplicable in this case because, recall, that the district court found subject matter jurisdiction not just under 1605 capital A but under 1605 A7 and under 1605 capital B. So logically, 1605 capital A cannot stand next to those other two provisions because that's precluded and foreclosed by the statutory language here. So another way to phrase this is to say that if the district court had found subject matter jurisdiction only under 1605 A7 and or 1605 capital B, there'd be no question that we're entitled to an appeal under the collateral order doctrine. Right? I think Mr. Carter acknowledged that. The background rule here is clear that the denial of immunity- Can't do it. You would still, you can't do what? A plaintiff cannot do that. If a plaintiff tries to circumvent other bases for subject matter jurisdiction- I understand. So in my hypothetical, you might prevail on motion to dismiss because it would have been covered by other claims. Correct. I'm just sort of playing out how the prohibition on interlocutory appeals would work. So if there were a claim under 1605 A and there were no other claims, even if you think it could have been covered by other claims and therefore you should be entitled to dismiss the case, that would clearly be an action brought under 1605 A and it would be subject to 1605 AF and therefore there would be a bar on interlocutory appeals. So even if you could dismiss the claim on the merits, you still couldn't have an interlocutory appeal over the denial of sovereign immunity, right? I think that's right. But that's confined. Under 1605 A, even if it shouldn't have been brought under 1605 A, 1605 AF would still bar interlocutory appeals. If the 1605 A claim was brought standalone in a complaint, yes. Yeah, but then why, so if you agree with me that it was brought only 1605 A in a complaint, why wouldn't a complaint that is brought under 1605 A but that has other claims too, why isn't that an action brought under 1605 A? Well, that's kind of our situation here, right? I understand that's hypothetical and I'm asking about this case. Right, right. But if the district court concludes that there's subject matter jurisdiction under 1605 A7 and 1605 capital B, that's pens down. The court cannot properly proceed to consider subject matter jurisdiction under 1605 capital A. That's foreclosed by the plain language of the statute. So, and the idea that the district court's misstep by No, but the 1605 A1, you were saying, it means that you wouldn't prevail on the, oh, you're saying it doesn't, the immunity strip in 1605 A, A1 wouldn't apply if you brought other claims or if there are other claims that apply. Right, it's clearly a disfavored section, right? Congress wanted Well, 1605 A7 is the predecessor statute, right? Yes. And so Congress did envision claims brought under 1605 A7 that would be replaced by claims under 1605 A because it's the successor statute. That's why they made the provision that you could maintain the action on motion or through filing a related action, right? Well, So would it be very strange to say because you had an earlier claim under the predecessor statute, you're barred from suing under the successor statute? No, I don't think it is strange because, as Mr. Carter pointed out, 1605 A gives plaintiffs significant additional rights that even 1605 A7 didn't provide, right? Punitive damages, the right to prejudgment attachment, all sorts of other But you're saying if you have a claim under 1605 A7, you ipso facto don't have a claim under 1605 A. But that can't be right if Congress says that people who brought claims under 1605 A7 are allowed to transform those actions into 1605 A claims. They're allowed to transform. That doesn't mean that they have a valid claim. The defendant still has rights. How would you square your interpretation then with the goals of the legislation? Well, I think the goals of the legislation were to confine 1605 A to a very discreet set of cases where no other statutory exceptions to immunity applied. And only in those circumstances could there be invocation of 1605 A. If that was the situation, if 1605 A is the only basis for subject matter jurisdiction, then yeah, 1605 A says no collateral order doctrine. So I think it all fits together and there's a logic to it. But in a different way, in the sense that 1605 A, which protects the plaintiffs here under these circumstances, interlocutory appeals, that would apply to additional claims that are included with 1605 A. Because comedy is – Congress thought of comedy differently when it was state-sponsored terrorism under – with State Department designations. And so maybe the whole premise of sovereign immunity is different when you're dealing with a state-sponsored terrorism. Yeah, but I guess I reject the premise of your question because there cannot be 1605 A together with other exceptions to immunity in the same case. Because the threshold language of 1605 A ensures that that provision operates only as a standalone provision. That's what – it has to be a case not otherwise covered by this chapter. So there cannot be a scenario where 1605 A is joined together with other claims. Does it matter whether – I mean, do you – does your argument hold true if the only claim in the – in the complaint is a 1605 A claim, notwithstanding they could have charged someone a provision? 16 – you know, JASTA or one of the others. Yeah, that's how I understood Judge Menasche's earlier question. In that situation, if a claim was improperly brought under 1605 A, it's still brought under 1605 A as a standalone. And under those circumstances, I agree that 1605 A-F would preclude the operation of the collateral order doctrine. I do agree with that. But again, kind of to get back to my basic premise here, I think we're on common ground. I think – I don't think there's any dispute that if the district court's decision had been limited to 1605 A-7 and 1605 B, there'd be no dispute that we're entitled to the collateral order doctrine and to take an interlocutory appeal. So the sole question before this court is the district court's misstep. And by also adding on 1605 A, does that deprive us of the interlocutory appeal? And there's no way that that can be the case. What if the district court's misstep? You mean not dismissing the 1605 A claim because of the presence of other claims? Yes. Your argument? Yes. The district court should have missed it or dismissed it. But even if the district court had dismissed it, wouldn't it still have been a case brought under 1605 A? I mean, you just said a moment ago, even if it's improperly brought under 1605 A, it's still an action brought under 1605 A. Well, I don't think in those circumstances it's brought under. And here – and this is kind of dovetailing into additional argument, right? Back to the point that Your Honor raised at the outset. So let's just play that out. So if the district court had dismissed the 1605 A claim under your theory, but other claims survived, you're saying you should be entitled to an appeal based on the collateral order doctrine because even though it is an action brought under 1605 A, it shouldn't have been, and the district court dismissed it, and therefore we should treat it as if it hadn't been. Right. The inclusion of a meritless 1605 A claim, among other claims in a complaint, cannot deprive the foreign sovereign of an immediate appeal. No. I don't think it can operate that way. And I guess the arguments I was also dovetailing into is here our position is that the plaintiffs haven't even brought any – they never brought any claims under 1605 A. At most they maintained them because they purport to have transitioned the claims from 1605 A. The 2008 NDAA in Section 1083 C.2 says that you can bring a related action after the effective date of 1605 A, right? Right. And it says the related action. If an action arising out of an active incident has been timely commenced under 1605 A.7, any other action arising out of the same act or incident may be brought under Section 1605 A of Title 28 of the United States Code if the action is commenced not later than the latter of 1605 A by the deadline. Okay, but that's important. The statute itself describes a related action as brought under 1605 A. Yeah. So then it's not maintained, right? It's brought under the statute. It tells us that it is. 1083 C.3 is addressing a situation where there's been a judgment under 1605 A.7. And the judgment creditor is able to transform the claim into 1605 A. That's what Circuit Judge Douglas Ginsburg held in the Simon case correctly because the 1083 C.2 talks about transitioning ongoing cases. 1083 C.3 talks about transitioning cases after judgment. And, Your Honor, the language that you elided at the end of your quotation refers to judgment. And that is a defining characteristic of 1083 C.3. Oh, I see. 60 days after the date of the entry of judgment in the original action or the date of the enactment of this act. So it's not necessarily the date of judgment in the original action. Not necessarily, but it's contemplating judgment. So that's what happened in this case, right? They brought it within 60 days of the date of the enactment of the act. No, no, no. Claims here didn't do anything within 60 days of anything. The actions here, as Judge Walker established earlier, were commenced in 2002-2003. They were brought under 1605 A.7. It was 16 years later in 2018 through amendments to the complaints that the 1605 A claims were added. So there was never a brought an action under 1605 A. There was an attempt to transform an action into 1605 A. That attempt cannot be squared with 1083. So do you think that they haven't actually, they don't actually, aren't actually entitled to maintain the earlier action? Correct. Under 1605 A.7? Correct. Under 1605 A? That's right. That's right. It's a question also of interpreting what you mean by brought under. Initially brought under, or here's a claim that's brought under this statute. I mean, you know, there's a temporality argument and it's ambiguous. I agree that in normal parlance that argument might hold some water. But here we're looking at a statute that conspicuously distinguishes between brought under and maintained under. And when you have that conspicuous choice of language in certain provisions, and then in 1605 A.F. it's conspicuously absent and it says only claims brought under 1605 A foreclose the collateral order doctrine. So that's got to be, that language has to be credited. Okay. Thank you very much, Mr. Curran. We'll hear back from Mr. Carter on rebuttal. Thank you, Your Honors. Just a few issues. With regard to this argument related to the not otherwise covered language of 1605 A, that doesn't eliminate the fact that there are claims here that were brought under 1605 A. At most what it says is that the 1605 A claims sit behind the 1605 B claims, which presents an additional problem for Sudan's appeal. It doesn't solve anything. Because if Sudan were permitted to appeal under 1605 B and it were successful on that, this court would simply then be confronted with the need to address jurisdiction under 1605 A. So your position is that actually there are other statutes that cover this case, but you are arguing the alternative that you're bringing those claims, but if they don't succeed, you can pursue a claim under 1605 A? Or maintain a jurisdiction under 1605 A? Your Honor, we do believe that both of the- Or is your argument that it's compatible, that actually 1605 A 1A does not preclude claims under those other statutes? It is compatible. That's what the district court found, this idea that the not otherwise covered language somehow eliminates the ability of the court to reach 1605 A wasn't even raised below. So it's not part of the underlying proceedings that resulted in the district court's decision. But what's your position on that question? So what is the meaning of the language that says that the immunity strip only applies in a case not otherwise covered by this chapter? It creates a hierarchy, Your Honor, but it doesn't eliminate the fact that the claims are brought under 1605 A. At some future point- So by hierarchy, you mean that the district court should first consider the other claims and maybe jurisdictionally based on the other claims. And if those fail, then it should look to 1605 A. So you're bringing the claims in the alternative. The claims are both brought in the alternative and separately. There are separate jurisdictional elements. And so the district court, if confronted with this issue, would need to analyze separately the jurisdictional elements of each. But 1605 A 1A talks about a case not otherwise covered by this chapter. So if it's the same case, it's either covered by this chapter or not, right? Either it should properly be under the other statutes or under this one. I suppose- Does it have to be the alternative? Well, Your Honor, I think there are circumstances in which there could be multiple claims in a case, some of which are covered by one of the immunity exceptions of the FSAA and others which are covered by a different provision. That's certainly a possibility that the statute allows. Again, the problem here is that this entire argument simply runs Sudan into the problem that its proposed collateral order appeal can't possibly result in a conclusive determination of the immunity question because on its best day, if it can appeal the 1605 B issue, if this court were to agree with it, this court is simply left with 1605 A as an alternative basis of jurisdiction that can't be reached. Okay, I understand that. What about the argument about whether it's broad or maintained? So is your action a related action under 1083 C3 or is opposing counsel right that you didn't bring it within the 60 days and so it's actually not a related action, it's an amendment of an earlier complaint? Your Honor, it's a related action under C3. That provision actually provides that the related action can be brought at any point up to 60 days after a judgment is entered and these cases had not yet proceeded to a judgment. And so that window is still open, which is what the district court found. So you're saying that when it says that the action is commenced not later than the latter of 60 days after the date of the entry of judgment because there is not yet a judgment, you're within that window. That's correct, Your Honor, and that's what the district court found and that's the basis for determining that we had properly brought claims under C3. If you can maintain the action at all, that has to be right, right? Otherwise, you just wouldn't qualify as a related action. Well, there were arguments as well of potential relation back, but that is the basis the district court found that we could bring the related action under 1605A. Correct, Your Honor. And the district court may be right or wrong about that, but that would still be an action brought under 1605A I guess would be your position. That's correct, Your Honor. In addition, all of the arguments centered around 1083 and whether or not we complied with its provisions go very directly to the court's determinations about 1605A and thus are not subject to any sort of appellate review under the collateral order doctrine. These arguments really go to the heart of whether or not 1605A is applicable, whether claims were brought under 1605A, and that's not an area where they're entitled to pursue an interlocutory appeal under the collateral order doctrine. Okay. Thank you very much. Thank you, Your Honor. Mr. Carter, the motion is submitted.